UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROMARO RAY CARSWELL, JR.,

        Plaintiff,                      Case No. 1:21-cv-1041

v.                                        Honorable Paul L. Maloney

UNKNOWN RYKSE et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Skipper, Cunningham, and Bouck. The Court will also dismiss, for failure to state a claim, Plaintiff's Eight Amendment claim for deliberate indifference to a serious medical need against Defendant Rykse. Plaintiff's Eighth Amendment claim against Defendant Rykse for excessive use of force, however, remains in the case.

**Discussion**

I.   **Factual Allegations**

Plaintiff is incarcerated with the Michigan Department of Corrections (MDOC). Plaintiff is serving a sentence of 13 to 30 years for second-degree murder, in violation of Mich. Comp. Laws § 750.317, imposed on April 6, 2015. Plaintiff is presently housed at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. Plaintiff sues the following RMI personnel: Warden Gregory L. Skipper; Sergeants Unknown Rykse and Unknown Cunningham; and Corrections Officer Unknown Bouck.

Plaintiff alleges that, on an unspecified date, between 4:30 and 5:30 p.m., Defendant Bouck was performing a "procedure count." (Compl., ECF No. 1, PageID.2.) Plaintiff reports that, at that time, he was experiencing "breathing trouble an[d] chest pain." (*Id.*) Plaintiff asked Bouck if he would call medical or permit Plaintiff to go to medical for chest pain. Bouck responded: "That will be a hard NO." (*Id.*)

Thereafter, Plaintiff saw the "bread cart" coming with food trays. He called out for medical help and demanded to see the shift commander. He was denied both, but he does not say by whom. Concerned that there was no other way to get help, Plaintiff panicked. He extended his arm out of the food slot and grabbed the bread cart. He informed the unnamed officer that he only wanted "to be checked to make sure his health [was] not in immediate danger." (*Id.*)

Shortly thereafter, Defendant Rykse arrived at Plaintiff's cell. (*Id.*, PageID.3.) Rykse did not ask why Plaintiff grabbed the bread cart, Rykse simply told Plaintiff to release the cart. Plaintiff informed Rykse about Plaintiff's chest pain and that he only wanted to be checked by medical. Rykse told Plaintiff that he did not take demands from prisoners, whether they needed medical assistance or not. Rykse then proceeded to assault Plaintiff's left arm with enough force

2

to bruise the arm, scattering the food trays. Plaintiff released the cart and followed directions, allowing himself to be cuffed up, and calmly leaving his cell. Plaintiff was escorted to a segregation cell.

While Plaintiff was in the segregation cell, he was visited by Defendant Cunningham. Cunningham reviewed a disciplinary ticket with Plaintiff, presumably regarding the bread cart incident. Plaintiff complained that Bouck and Rykse had refused to obtain medical care for Plaintiff. Cunningham asked if Plaintiff would allow staff to place him in belly chains so he could be escorted for medical evaluation. Plaintiff said he was not willing and asked to have a healthcare provider come to Plaintiff. Defendant Cunningham said no.

Plaintiff contends that Defendants violated their duties and obligations as MDOC officers and Plaintiff's constitutional rights, specifically referencing the Eighth Amendment. (*Id*., PageID.4.) Plaintiff asks the Court to award him damages in the amount of $70,000.00.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

3

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted above, Plaintiff claims that Defendant violated his Eighth Amendment rights.

### III. Discussion

#### A. Defendant Skipper

Plaintiff identifies Warden Skipper as a defendant, but otherwise makes no allegations against Defendant Skipper. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286

4

F.3d 834, 842 (6th Cir. 2002)).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").  Plaintiff fails to even mention Defendant Skipper in the body of his complaint.  His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

      **B.**      **Vicarious liability**

It is possible that Plaintiff names Defendant Skipper as a defendant solely because of Skipper's role as warden and, therefore, supervisor of all employees at RMI.  Moreover, Plaintiff may also intend to hold Defendant Rykse liable for Bouck's failure to secure treatment for Plaintiff.  Plaintiff alleges that Rykse "refused to supervise."

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v.*

5

*Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

As noted above, Plaintiff has failed to allege that Defendant Skipper engaged in any active unconstitutional behavior and Skipper cannot be held liable simply because he supervises the other Defendants.  Plaintiff has alleged that Defendant Rykse engaged in active unconstitutional behavior—those claims are addressed below—but his allegations also suggest that Rykse might be liable for the actions of Bouck simply because Rykse may supervise Bouck.  For the same reason Plaintiff's allegations do not suffice to hold Skipper liable for the actions of Cunningham, Rykse, or Bouck, the allegations do not suffice to hold Rykse liable for the actions of Bouck.  Accordingly, he fails to state a claim for vicarious liability against Skipper or Rykse.

  **C.** **Violation of MDOC policy**

Plaintiff alleges that Defendant Rykse's actions violated MDOC policy.  (Compl., ECF No. 1, PageID.3.)  To the extent Plaintiff invokes prison policy, he fails to allege a constitutional claim.  Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States."  *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007).  The only possible way a policy might enjoy constitutional protection would be through the Due Process Clause.

6

To demonstrate such a due process violation, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff's allegations that Defendant Rykse violated prison policy therefore fail to raise a cognizable federal constitutional claim.

D. **Eighth Amendment violation – excessive force**

Plaintiff alleges that Defendant Rykse applied force to remove Plaintiff's hand and arm from the bread cart. Construed liberally, Plaintiff's allegations suggest that the application of force was excessive.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson*

7

*v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Id.*

This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings.  *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).  Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment.  *Rhodes*, 452 U.S. 347.  The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied.  *Hudson*, 503 U.S. at 7; *see also Wilkins v. Gaddy,* 559 U.S. 34, 37–39 (2010).  Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6–7; *Wilkins*, 559 U.S. at 37.  In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response.  *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord*

8

*Griffin v. Hardrick*, 604 F.3d 949, 953–54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

Upon initial review, the Court concludes that Plaintiff has alleged facts sufficient to state an Eighth Amendment claim for excessive force against Defendant Rykse. However, no other Defendant actively engaged with Plaintiff during the alleged use of excessive force.

### E. Eighth Amendment – deliberate indifference to a serious medical need

Plaintiff also alleges that Defendants Bouck, Rykse, and Cunningham refused to obtain medical care for Plaintiff despite his complaints of chest pain. Those allegations, construed liberally, implicate another type of Eighth Amendment claim: deliberate indifference to a serious medical need.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial

9

risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

In another case involving symptoms that potentially correlate with a heart attack, the Sixth Circuit Court of Appeals has explained what a plaintiff must allege to demonstrate the objective component:

> This Circuit recognizes two theories under which a plaintiff can demonstrate the objective component of an Eighth Amendment deliberate indifference claim. First, if a plaintiff suffered from a minor or non-obvious medical condition, he can show that his condition was objectively serious "if it is 'one that has been diagnosed by a physician as mandating treatment.'" [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)] (quoting *Gaudreault v.*

10

> *Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)). Second, "where a plaintiff's claims arise from an injury or illness 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention,'" the plaintiff can meet the objective prong by showing "that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id*. at 899–900 (quoting *Gaudreault*, 923 F.2d at 208).
>
> Citing *Blackmore* and our decision in *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311–12 (6th Cir. 2005), Mattox argues that: (i) his heart attack symptoms were so obvious that he does not need to show medical evidence verifying that he needed treatment; and (ii) there is no requirement that he show that he was actually suffering from a serious medical condition as long as he can show that prison staff failed to respond to circumstances that created a substantial risk of serious harm.
>
> Mattox's arguments flatly misstate the law. As we explained in *Blackmore*, when a plaintiff can show that his need for medical care was so obvious that even a layperson should recognize it, he is not required to provide objective evidence that he needed medical care at the time he was experiencing the symptoms. *Blackmore*, 390 F.3d at 899–900. This makes sense—if a plaintiff has been stabbed, for instance, he should not require a doctor's diagnosis of internal bleeding before prison staff should be expected to tend to his medical needs. But the "obvious malady" theory does not excuse a plaintiff from showing that he actually needed medical care. As *Blackmore* itself recognizes, a plaintiff proceeding under this theory must still show "that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id*. at 900 (emphasis added).

*Mattox v. Edelman*, 851 F.3d 583, 598 (6th Cir. 2017). Plaintiff, like Mattox, other than saying he experienced a symptom, has not alleged that he actually needed medical care. He does not identify a condition that was diagnosed by a physician as requiring treatment and Plaintiff's self-report of chest pain does not make a condition—if, in fact, there were a condition—"so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Id*. (internal quotes omitted). There are no allegations in Plaintiff's complaint from which the Court might infer that Plaintiff actually experienced the need for medical treatment. Accordingly, he has failed to allege a serious medical need and his allegations cannot state an Eighth Amendment claim for deliberate indifference to such a need.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Skipper, Bouck, and Cunningham will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claim against Defendant Rykse for deliberate indifference to a serious medical need.  Plaintiff's Eighth Amendment claim for the use of excessive force to separate Plaintiff from the bread cart against Defendant Rykse remains in the case.

An order consistent with this opinion will be entered.

Dated:   January 5, 2022                             /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge